UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PETER MAHONEY, PEGGY MAHONEY, LYLE W. CONWAY, MARK VAN'T HUL, and LYLE S. CONWAY,<br><br>Defendants. | NOS. CR-04-2127-RHW<br>CR-04-2128-RHW<br>CR-04-2129-RHW<br>CR-04-2130-RHW<br>CR-04-2131-RHW<br><br>**ORDER ON PRETRIAL MOTIONS** |

A pretrial conference was held in the above-captioned case on May 23, 2005. Defendant Peter Mahoney was present and represented by Mark Vovos; Defendant Peggy Mahoney was present and represented by Peter Erhbland; Defendant Lyle W. Conway was present and represented by Robert Kovacevich; Defendant Lyle S. Conway was present and represented by Donald Kellman. Defendant Mark Van't Hul was excused from attending the hearing, but his defense counsel, Christina Hunt, was present for the first portion of the hearing. The Government was represented by Assistant United States Attorney Jane Kirk.

A superseding indictment was filed against the Defendants on January 12, 2005. The indictment alleges that the Defendants were engaged in a conspiracy to traffic in contraband cigarettes between Idaho and Washington, and did traffic in contraband cigarettes between Idaho and Washington, in violation of the

**ORDER ON PRETRIAL MOTIONS** * 1

Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 371, 2342(a) & 2 ("CCTA"). The indictment also alleges that the Defendants engaged in money laundering and conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956, 1957 & 2.

Before the Court are Defendant Mahoney's Motion for a Franks Hearing (CR-04-2127; Ct. Rec. 30); Defendant Lyle W. Conway's Motion to Dismiss, based on various theories of constitutional violations and statutory interpretation (CR-04-2129; Ct. Rec. 17); Defendant Peter Mahoney's Motion to Suppress, based on lack of probable cause (CR-04-2127; Ct. Rec. 26); Defendant Peter Mahoney's Motion to Dismiss Case, based on discriminatory enforcement (CR-04-2127; Ct. Rec. 24); Defendant Mahoney's Motion to Dismiss based on the burden that Washington State's tax scheme places on tribal sellers (CR-04-2127; Ct. Rec. 33); Defendant Mahoney's Motion to Dismiss because the CCTA does not apply to tribal sellers (CR-04-2127; Ct. Rec. 35); Defendant Mahoney's Motion to Dismiss because his cigarette sales were authorized by the United States Department of the Interior and Bureau of Indian Affairs (CR-04-2127; Ct. Rec. 37); Defendant Peter Mahoney's Motion to Suppress, based on a tracking device without a warrant (CR-04-2127; Ct. Rec 28); and Defendant Lyle S. Conway's Motion to Suppress Evidence Seized Pursuant to Search Warrant (CR-04-2131; Ct. Rec. 16). The Court addresses each motion below, in turn.

## DISCUSSION

### I.    Motion for a Franks Hearing

The Defendant, Peter Mahoney, joined by his Co-defendants, alleges that a 112-page affidavit by Ralph Lambright, dated May 14, 2003 (Ct Rec. 42; Exhibit A),  recklessly or intentionally omitted information or contained inaccurate information (Ct. Rec. 30).  Based on these omissions and false statements, the Defendants move the Court to grant a *Franks* hearing, and find that the affidavit did not support the Magistrate's finding of probable cause to issue search warrants.

**ORDER ON PRETRIAL MOTIONS** * 2

The Defendant's specific objections are outlined in the "Summary Statement of Declarations and Allegations of Misstatements and Omissions that Are Set Forth in the Federal Affidavit for a Search Warrant in Support of an Evidentiary Hearing," as well as in supporting affidavits (Ct. Recs. 32, 40, 41, 42).

**A.    The *Franks* Standard**

A defendant may obtain an evidentiary hearing on the validity of a search warrant by making a "substantial preliminary showing" that (1) the supporting affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995). Thus, "[t]he threshold determination in a *Franks* hearing is whether erroneous statements or omissions in an affidavit supporting a search warrant were made 'knowingly and intentionally, or with reckless disregard for the truth.'" *United States v. Senchenko*, 133 F.3d 1153, 1158 (9th Cir.1998) (quoting *Franks*, 438 U.S. at 155-56, 98 S.Ct. 2674). "If such a finding is made, the court then determines whether 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" *Id.*

When challenging a warrant affidavit pursuant to *Franks*, the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation. *Franks*, 438 U.S. at 171. To succeed on a *Franks* challenge, the Defendant must prove by a preponderance of the evidence that the affidavit's remaining content is insufficient to establish probable cause. *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997).

**B.    The Affidavit**

The 112-page Lambright affidavit alleges that Defendant Peter Mahoney was engaged in shipping wholesale unstamped cigarettes from the Coeur d'Alene Indian Reservation in northern Idaho to various smoke shops located on Indian

**ORDER ON PRETRIAL MOTIONS** * 3

reservations throughout Washington.  Idaho does not require that cigarette cartons sold on Indian Reservations bear tax stamps, while Washington state requires that cigarettes either bear tax stamps (tax-paid, tax-exempt, or approved tribal stamps) or be pre-approved for shipment to the tribal organization.  RCW 82.24.030 & 82.24.250; WAC 458-20-192(9)(a).  The affidavit alleges that the purpose of Defendants' trafficking scheme was to avoid paying Washington State tax on cigarettes sold to non-Indians at the Washington Indian Reservation smoke shops.

The Affidavit purports to provide facts sufficient to support a finding of probable cause to issue twelve search warrants for businesses and residences within the Eastern and Western Districts of Washington, as well as the District of Idaho.  Locations to be searched included the Lil' Brown Smoke Shack (LBSS), Union Gap, Washington; Goodman Road Smoke Shop (GRSS), Union Gap, Washington; John and Judy Hunter, Wapato, Washington; LA Nelson/Burke's Distributing (Burke's), Spokane, Washington; Black Sheep Distributing (Black Sheep), Spokane, Washington; Louie Mahoney, Plummer Idaho; Chrissy's Corner, Plummer, Idaho; JKL Enterprises, Plummer, Idaho; Two Yay Yays & Margaret Jose, Plumer, Idaho; Pete Mahoney, Plummer, Idaho; The Warpath/ Smoke Shop/ Trading Post/ Mahoney Petroleum/ Pemmican Inn Restaurant, Lounge & Café/ Warpath One Stop, Plummer, Idaho; Lyle's Smoke Shop (LSS), Fife, Washington; Lyle's II Smoke Shop (LSSII), Tacoma, Washington; and the Indian Smoke Shop (ISS), Milton, Washington.  The description of the businesses and residences to be searched belonging to Defendant Mahoney are contained in paragraphs 29-31 of the affidavit.

The portions of the Affidavit that specifically mention Peter Mahoney or one of his businesses include:

(1)  Section VIII, titled "Probable Cause for JKL and Warpath (¶¶ 67, 70-73, 80-85, 90-91, 93, 96-99, 101, 110-116, 119-120);

(2)  Section IX, titled "Financial Investigation" (¶ 158);

**ORDER ON PRETRIAL MOTIONS** * 4

(3) Section X, titled "probable cause for Burke's and Black Sheep" (¶¶ 142-143); and

(4) Section XII, titled "Evidence to be Seized" (¶ 165 (A)(8), (9) & (16)).

Defendant Peter Mahoney objects to multiple statements made in the Affidavit. These are addressed below, in turn.

### (i) The Grouping of Peter Mahoney, His Siblings, and Their Businesses

The Defendant argues that the affidavit improperly contains intentional false statements implying a business relationship between Peter Mahoney's businesses and those of his siblings, especially Louie Mahoney, although no such relationship exists. Defendant Mahoney argues that at the time the affidavit was presented, the affiant knew that the Defendant was estranged from his siblings and that his businesses were completely separate from theirs. The Defendant asserts that because the affidavit was not created in haste, there was no reason why the affiant could not have separated the facts supporting probable cause for each individual by their business entities. As the Affidavit now stands, Defendant argues, it smacks of guilt by association.

Peter Mahoney has two brothers and three sisters, named Margaret Mahoney-Jose; Louie Mahoney; John George Mahoney; Christine Mahoney-Meyers; and Connie Mahoney (*Mahoney Decl.* ¶ 7). He is sole owner and stockholder of Warpath, Inc., which consists of Warpath Smoke Shop; Warpath Trading Post; Cheap Smokes; Corner Market; Pemmican Inn/Lounge; One Stop; Warpath Fireworks; and Arrow Espresso Coffee Shop (*Mahoney Decl.* ¶ 9).

Peter Mahoney denies any business relationship with "Chrissy's Corner," owned by his sister Christine Mahoney-Meyers (*Mahoney Decl.* ¶ 25). At one time, he leased property in Worley, Idaho to his sisters Margaret Mahoney-Jose and Christine Mahoney-Meyers, on which they operated "Two Ya Ya's;" this

**ORDER ON PRETRIAL MOTIONS** * 5

lease, however, was terminated by the Defendant when his sisters breached the lease agreement (*Mahoney Decl.* ¶ 27).

Peter Mahoney also denies having any business relationship with his brother Louie Mahoney (the owner of JKL Enterprises) (*Mahoney Decl.* ¶ 30), with the exception of a brief foray during eight months of 1998 or 1999. Peter Mahoney attests that his previous business connection with Louie Mahoney involved legally-distributed cigarettes, and was terminated in June 1999. Peter Mahoney presents a copy of a restraining order obtained on July 25, 2002, by Margaret Mahoney-Jose and Louie Mahoney, to keep Peter and Peggy Mahoney and their lawyer, Peter Erbland, from entering the business "Two Ya Ya's," as evidence of the estranged relationship between the Mahoney siblings. (*Mahoney Decl*, Ex. G.)

Peter Mahoney asserts that the Idaho Affidavit is misleading in that it tries to draw ties between JKL Enterprises (owned and operated by Louie Mahoney) and Warpath (owned and operated by Peter Mahoney). *See Affidavit* at p. 42, Section VIII. In Section VIII, facts supporting probable cause to search Louie and Chrissy Mahoney's businesses and residences are interspersed with references to Peter Mahoney's businesses and residences. At paragraphs 87, 89-92, and 100-110 facts about other Mahoney siblings' businesses are inserted into ongoing narrative about Peter Mahoney. Defendant Peter Mahoney argues that this hodgepodge of facts is misleading because it attempts to associate the shady activities of the Mahoney siblings with the legal activities of Peter Mahoney, and infer a criminal enterprise. The Defendant argues that it was misleading not to include the fact that the Mahoney siblings are estranged and do not do business with each other in Section VIII; instead, it is not mentioned until paragraph 120, in a later section.

The Government responds that the Affidavit provided ample detail for the Magistrate to separate information regarding the Defendant and his siblings. The Government argues that the Affidavit does not attempt to hide the fact that the Mahoney siblings are estranged. The Government asserts that the Affidavit, at

**ORDER ON PRETRIAL MOTIONS** * 6

paragraphs 97, 98, and 120, provides information that Peter and Louie Mahoney are no longer operating together.  The Government further asserts that the heading "Probable Cause for JKL Enterprises and Warpath" does not impermissibly link Peter Mahoney with his siblings or other buildings because the Magistrate was able to discern that the headings link the subjects geographically. The Government maintains that the organization of the Affidavit does not create any impermissible inferences.

In addition to these more general objections, Peter Mahoney challenges several specific statements tying him to his siblings or other cigarette businesses.

The Defendant objects to the description at paragraph 67 of a check written to Warpath Warehouse, from BJ's II Inc., but deposited in the bank account of JKL Enterprises on July 27, 1999.  Peter Mahoney states that he had no business relationship with Louie Mahoney at this time and that the company "Warpath Warehouse" is not the name of his business – "Warpath, Inc."  Peter Mahoney, however, has made no showing that the check was not written to Warpath Warehouse.  Accordingly, there is no showing that paragraph 67 contains false information.

Peter Mahoney also objects to the statement in paragraph 70 stating that Warpath Company was "a source for untaxed cigarettes" in a 1999 investigation of the White Swan Trading Post because there are no supporting facts provided for this statement.  In the same paragraph, the affiant states that Tobacco Tax Program Manager Carter Mitchell stated he has dealt with both Louie and Pete Mahoney and that they are brothers.  The Defendant alleges that these statements attempt to tie him to Louie Mahoney in a misleading way.  The Government responds that because the Defendant does not show that the above paragraphs contain untrue statements, they should remain in the affidavit.

In paragraph 71, the affidavit cites a summary of total unstamped cigarette distributions by wholesalers to retailers on the Coeur d'Alene Indian Reservation

**ORDER ON PRETRIAL MOTIONS** * 7

in Idaho.  The Defendant objects that this summary groups him together with other Coeur d'Alene cigarette retailers, including those owned by his siblings, with whom he has no business relationship. The Government responds that the grouping is not misleading.

After a careful review of the affidavit, the Court finds that the Magistrate Judge would have been able to discern the paragraphs that specifically deal with Peter Mahoney, as opposed to other individuals, when making a probable cause determination.  Information pertaining to Louie Mahoney, other Mahoney siblings, and other cigarette retailers was sufficiently identifiable to avoid misleading the Magistrate Judge.  The Court notes that Section VIII of the affidavit is organized chronologically, rather than divided by person.  While a person-by-person affidavit may have been more accessible to the magistrate, it was not required by the Fourth Amendment.  Furthermore, the Court does not find that the affidavit's statement that Peter and Louie Mahoney are brothers is misleading, or the statement that Peter Mahoney was involved in the White Swan Trading Post was misleading.  In sum, considering the affidavit on its face, the Court finds that the Defendant has not made a substantial showing that the Affidavit contains misleading omissions or false statements regarding his association with his siblings.

**(ii)    Objections to Characterizations of Surveillance/Observations**

Defendant Peter Mahoney also makes numerous objections to the description and characterizations of various observations made of his business activity.

At paragraph 73, the Defendant objects to the statement that "Agents of the Washington State Liquor Control Board increased their investigative efforts regarding Pete Mahoney/Mahoney's Petroleum in February 2003," and argues this statement is conclusory and misleading.  The Court finds that this statement is adequately supported by other facts contained in the affidavit regarding the Board's investigative activities.

**ORDER ON PRETRIAL MOTIONS** * 8

The Defendant also maintains that paragraph 74(a) wrongly implies that the cigarettes purchased at Lyle's by Agent Copland were, in fact, the same as those unloaded from the truck observed there, when there are no facts to suggest this is the case. The Defendant asserts that there was no way to be certain that the Ryder truck contained illegal cigarettes, or that the A-1 Light 100s that the agents thought they observed were the same cigarettes purchased. The Court finds that the Magistrate would not be led to believe that the same cigarettes observed delivered were the ones purchased inside, based on paragraph 74(a). Instead, paragraph 74(a) merely provides support for the proposition that cigarettes are arriving from Idaho to Washington Indian Reservation retail establishments that sell unstamped cigarettes.

Similarly, the Defendant asserts that the affiant's implication at paragraph 74(b) that they observed Mark Van't Hul transporting cigarettes on March 5-6, 2003, is unsupported by facts. The affidavit states that agents were not able to observe loading or unloading of the Ryder truck. The Court finds that this statement is not misleading. The affidavit does not state that the agents could see cigarettes. Instead, this fact goes to establish a pattern of Mark Van't Hul transporting inventory with Ryder trucks.

The Defendant objects to paragraph 74(c), arguing that the affidavit implies that there was a relationship between the truck rental on March 5-6, 2003, and Peter Mahoney, based on prior conduct, when no facts support any relationship between the delivery on this date and Peter Mahoney. The affidavit states that the truck was rented with cash or check, and there is no trace of the cash or check to Peter Mahoney. The Court finds that the affidavit did not draw an improper link between Peter Mahoney and the Ryder truck rentals. The affidavit states facts showing that Van't Hul was known to rent Ryder trucks using a Mahoney Petroleum credit card. Moreover, the affidavit states that a car registered to Peter Mahoney dropped Van't Hul off at the Ryder rental store. The Defendant has not

**ORDER ON PRETRIAL MOTIONS** * 9

1  established that this information was incorrect.

2       The Defendant objects to paragraph 74(d) of the affidavit because the affiant

3  concludes that the boxes that Agents observed being unloaded from a Ryder rental

4  truck in the State of Washington "appeared to be the same size and shape as cases

5  of cigarettes," even though the boxes were unloaded at 8:50 p.m. at night, during

6  the winter. The Defendant argues that the boxes being unloaded were likely

7  firecrackers or other items sold at his store.  Again, the Defendant objects to the

8  implication made by the Affidavit that because an Agent was able to enter the

9  Indian Smoke Shop and purchase two packs of cigarettes without stamps affixed,

10 the cigarettes were the same cigarettes alleged to have been transported by Van't

11 Hul.  The Court finds that it was reasonable for the agents to state that the boxes

12 appeared to be cigarettes, given their training and experience.  The statement does

13 not create an unwarranted inference that the same cigarettes observed being

14 delivered were the ones purchased inside; instead, the statement provides support

15 for the proposition that cigarettes are arriving from Idaho to Washington Indian

16 Reservation retail establishments that sell unstamped cigarettes.

17      The Defendant objects to the statement in paragraph 74(f) that there were

18 more than 60,000 cigarettes transported, because there are no facts to support the

19 conclusion. The Government responds that paragraph 18 supports this conclusion,

20 because, as the affidavit points out, five to six full cases will typically contain

21 60,000 cigarettes.  The Court finds that the agents were capable of making a

22 reasonable estimate of the number of cigarettes, based on the number of cases

23 observed.  From the affidavit, it is apparent that agents were able to observe and

24 count the number of cases and half cases of cigarettes, and ascertain that some of

25 the cigarettes were Marlboros.

26      The Defendant objects to paragraph 75 in its entirety, which states "The use

27 of Peter Mahoney's property for the transfer of contraband cigarettes suggests that

28 his property is being used to facilitate the trafficking in contraband cigarettes."

**ORDER ON PRETRIAL MOTIONS** * 10

The Defendant argues that this statement is circular, factually incorrect, inflammatory, and unsupported by facts.  While the Court agrees that this statement is circular, the Defendant did not make a showing that it was factually incorrect. Moreover, even if the statement was stricken from the affidavit, it would make no impact on the existence of probable cause.

The Defendant objects to the description of the surveillance, at paragraphs 82-83, of the Ryder rental truck driven by Van't Hul on April 18, 2003because the surveillance was trespassing on private and tribal land as opposed to public spaces. He also objects to the use of the tracking device.  The Government contends that all surveillance was from public roads, and was legal under the plain view doctrine. *See Oliver v. United States*, 46 U.S. 170, 177-179 (1984) (noting that even putting up a fence or no trespassing sign does not create a legitimate expectation of privacy).  The Government responds that the use of the tracking device did not violate any privacy rights because the Defendant has not pointed to any information gathered that could not have been gathered by way of ordinary surveillance.  *See United States v. Knotts*, 460 U.S. 1982 (1983).  Regardless, the Government presents a warrant obtained for the placement of the tracking device. *See* Government's Response, Ex. G.  The Court finds that based on the warrant obtained by Government agents prior to the placement of the tracking device, the information gleaned from the device need not be stricken.

The Defendant objects to the fact that the affiant omits information regarding which of the Ryder rentals, if any, in paragraphs 84-85 correspond to the investigation of Peter Mahoney.  However, paragraph 85 states that the rental agreements identified the renter of the truck as Mark/Mahoney Petroleum. Therefore, the Court finds that the objection is baseless.

Peter Mahoney objects that the conduct described in paragraphs 86 and 111-113, because it is not illegal, has no bearing on the investigation, and only demonstrates that Mahoney was storing goods sold on tribal property.  Apparently

**ORDER ON PRETRIAL MOTIONS** * 11

innocent behavior, however, in combination with other facts, may support a finding of probable cause.  Here, the affiant's description suggests that Peter Mahoney was storing inventory at his residential address in a separate warehouse.  The Defendant has not come forward with evidence showing that the statement was false.  Therefore, if separate facts demonstrated probable cause to show that the Defendant was engaged in trafficking unstamped cigarettes, this fact would support probable cause to search the warehouses.

In sum, considering the affidavit on its face, the Court finds that the Defendant has not made a substantial showing that the Affidavit contains misleading omissions or false statements regarding observations made of his businesses or residential property.

### (iii)    The Kittitas Search Warrant and Running Wolf Smoke Shop

The Defendant objects that the affidavit, at paragraphs 93-95, tries to implicate Peter Mahoney in illegal cigarettes seized from a vehicle owned by the Running Wolf Shop.   He asserts that the Idaho Affidavit refers to the Kittitas search warrant as evidence that Peter Mahoney was carrying contraband cigarettes into Washington, but the affiant bases this conclusion on an incorrect address.  The Defendant maintains that the Kittitas Affidavit (*see* ¶13(d), ¶14) actually references Louie Mahoney's address, not Peter Mahoney's address. The Defendant presents ariel photography showing that Louie Mahoney's address is on the east side of Highway 95, while Peter Mahoney's residence is on the west side of Highway 95.

The Government concedes that the affiant made a mistake in the address, and that the Kittitas search warrant did not reference Peter Mahoney's address.  However, the Government contends that Peter Mahoney has had a relationship

//

**ORDER ON PRETRIAL MOTIONS** * 12

with Running Wolf  Shop in 1999, while in business with his brother.[1]

The Court finds that paragraphs 93-95 contain false assertions linking Peter Mahoney and the Kittitas search warrant.  The Court is concerned that this grievous mistake may have colored the Magistrate Judge's probable cause determination.  The only remedy provided by *Franks* for false statements, however, is to strike them from the Affidavit.  The Court may not make its own separate measure of the subtle influence that one piece of false information may have had on additional true statements in reevaluating probable cause.[2]  Under *Franks*, the Court finds that even if the false statements about the Kittitas search warrant were removed from the affidavit, sufficient facts would remain to support a finding of probable cause.

**(iv)    Conversation with Peter Erhbland**

The Defendant asserts that the affiant misrepresented the conversation that defense counsel Peter Ehrbland had with Program Manager Mitchell, stating that Peter Mahoney was no longer involved in "selling cigarettes like that," because Mr. Ehrbland never implied that Peter Mahoney previously had been selling contraband cigarettes.  *See Decl. of Peter Mahoney* at 9-11.  The Court finds that this objection calls into question the veracity of someone other than the affiant.  Therefore, the objection should be denied.

**(v)    Yakima Nation Stamps**

The Defendant argues that the request to search for cigarettes bearing the Yakima Nation Stamps is completely unsupported by the affidavit because there is no evidence that Peter Mahoney or his businesses ever used Yakima Nation

---

[1] The Government cites to outside evidence, not available to the Magistrate, to support this fact (see Government's Response, Ex. C); accordingly, that information is not properly before the Court for its probable cause analysis.

[2] The Court recognizes that this limited remedy may have a negative impact on the prophylactic power of the *Franks* doctrine.

**ORDER ON PRETRIAL MOTIONS** * 13

1   stamps.  While this is true, the affidavit also establishes that unstamped cigarettes
2   bearing the Yakima Nation Stamp may not be transported in Washington State
3   without a pre-notification to state authorities.  Therefore, Yakima Nation stamps
4   may be indicative of illegal cigarette trafficking.

5   After consideration of all of the objections raised by the Defendant, the
6   Court finds that, with the exception of the information contained in paragraphs 93-
7   95, the Defendant has failed to make a substantial preliminary showing that the
8   affidavit contains false information or misleading omissions.  When the
9   information pertaining to the Kittitas Affidavit is stricken, the Court finds that the
10  remaining facts are sufficient to support the Magistrate's finding of probable cause.
11  Accordingly, the Court finds that a *Franks* evidentiary hearing is not warranted.

12  **II.    Motion to Dismiss by Lyle W. Conway**

13  The Defendant Lyle W. Conway raises multiple arguments asserting that this
14  Court should dismiss the indictment (Ct. Rec. 17). These arguments are addressed
15  below, in *seriatim.*

16  **A.    Equal Protection Argument**

17  The Defendant argues that the Washington state cigarette tax scheme
18  impermissibly discriminates against Indian cigarette wholesalers, because they
19  require notification and allocation of Indian cigarettes, but do not maintain the
20  same requirements for sales on a Military base.  As the Government points out, the
21  Ninth Circuit dealt with this argument in *United States v. Baker*, and held that
22  because the state is unable to tax a federal instrumentality (such as the military)
23  without federal consent, there is no Equal Protection violation.  63 F.3d 1478,
24  1490-91 (9th Cir. 1995) (*citing American Fed'n of Gov't Employees v. Federal*
25  *Labor Relations Auth.*, 802 F.2d 1159, 1163 (9th Cir.1986)).  Washington's
26  allocation system was also upheld by the Ninth Circuit.  *See Baker*, 63 F.3d at
27  //

28

**ORDER ON PRETRIAL MOTIONS** * 14

1    1486-8.[3]  The Court finds no reason to deviate from settled precedent in the present

2    case; accordingly, the Defendant's motion to dismiss based on this ground is

3    denied.

4          **B.    18 U.S.C.  § 2341 Does Not Apply to Reservation Sales**

5          The Defendant asserts that 18 U.S.C. § 2341 was not intended to be applied

6    to Indian reservation sales.  The Defendant cites to legislative history for the

7    proposition that the CCTA does not apply to cigarette sales on Indian reservations.

8    However, in *Baker*, the Ninth Circuit held that the CCTA was a law of general

9    applicability, which was "presumed to apply with equal force to Indians."  63 F.3d

10   at 1484.  *Baker* further held that the legislative history cited by the Defendant was

11   not "evidence of congressional intent to create an additional category of persons

12   exempt from the CCTA;" instead, the court held that the footnote only applied to

13   persons "exempted by law."  *Id.* at 1486.  Persons "exempted" by state law do not

14   include Indians.  Accordingly, the Court denies the Defendant's motion to dismiss

15   on this ground.

16         **C.    Incidence of Tax**

17         The Defendant argues that under *Oklahoma Tax Comm'n v. Chickasaw*

18   *Nation*, 515 U.S. 450 (1995), any tax that places the incidence of tax on Indians is

19   preempted by Federal law, and void.  Accordingly, Defendant contends that

20   because Washington's cigarette tax is placed on the Indian retailer at the first

21   instance of sale, it is void as a state tax of Indian personal property.   The

22   Government contends that under RCW 82.24.250, sales to Indians by Indians are

23   

24         [3]  At the motions hearing, Defendant argued that the decision *Cabazon Band*

25   *of Mission Indians v. Smith*, 388 F.3d 691, 668-69 (9th Cir. 2004) was on point.

26   However, in *Cabazon*, the state treated all other law enforcement officers in the

27   same manner, but singled out tribal officers for lesser treatment – there was no

28   issue raised involving the tax of a federal instrumentality.  *Id.*

**ORDER ON PRETRIAL MOTIONS** * 15

1   exempt from tax, and when Indians sell to non-Indians, they need to make only a

2   "precollection of the tax."  WAC 458-20-192(9)(a)(i).

3       In *Chickasaw*, the Supreme Court held that "[i]f the legal incidence of an

4   excise tax rests on a tribe or on tribal members for sales made inside Indian

5   country, the tax cannot be enforced absent clear congressional authorization."  515

6   U.S. at 458-59.  The Court further explained that "if the legal incidence of the tax

7   rests on non-Indians, no categorical bar prevents enforcement of the tax; if the

8   balance of federal, state, and tribal interests favors the State, and federal law is not

9   to the contrary, the State may impose its levy . . . and may place on tribe or tribal

10  members 'minimal burdens' in collecting the toll."  *Id.* (citations omitted).  The

11  Court emphasized that this rule was a "bright-line standard."  *Id.* at 460.

12      In an earlier opinion, however, the Supreme Court specifically held that

13  Washington's cigarette tax scheme did not impermissibly tax Indians.  *Washington*

14  *v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134 (1979)

15  ("Colville").   The Court hld that Washington state had the ability to tax the on-

16  reservation sales of cigarettes by Indians to non-Indians.  *Id.* at 161.  The Supreme

17  Court upheld Washington's scheme because it was "designed to prevent the Tribes

18  from marketing their tax exemption to nonmembers who do not receive significant

19  tribal services and who would otherwise purchase their cigarettes outside the

20  reservation."  *Id.* at 150-151. The Court further held that the Washington scheme

21  placed the incidence of tax on the retail purchaser.  *Id.*

22      The Defendant argues that *Colville*'s holdings regarding the incidence of tax

23  are no longer binding on this Court due to 1995 amendments to RCW 82.24.260.

24  The 1995 amendments changed the provisions relating to the collection of the tax,

25  to remove language requiring Indians selling to non-Indians to "shall collect from

26  the buyer or transferee thereof the tax imposed on such buyer or transferee."

27      The current version of RCW 82.24.260, provides that with the exception of

28  //

**ORDER ON PRETRIAL MOTIONS** * 16

"[a]n Indian tribal organization with respect to sales to enrolled members of the tribe,"

> a person who is in lawful possession of unstamped cigarettes and who intends to sell or otherwise dispose of the cigarettes shall pay, or satisfy its precollection obligation that is imposed by this chapter, the tax required by this chapter by remitting the tax or causing stamps to be affixed in the manner provided in rules adopted by the department.

The term "precollection obligation" is defined in RCW 82.24.010(4) as: "the obligation of a seller otherwise exempt from the tax imposed by this chapter to collect the tax from that seller's buyer."

In addition, WAC 458-20-192 provides, in part:

> (5) . . . . 'Incidence' means upon whom the tax falls. For example, the incidence of the retail sales tax is on the buyer.

> (a)(i) Retail sales tax - tangible personal property - delivery threshold. Retail sales tax is not imposed on sales to Indians if the tangible personal property is delivered to the member or tribe in Indian country or if the sale takes place in Indian country.

> . . .

> (c) Tax collection. Generally, sales to persons other than Indians are subject to the retail sales tax irrespective of where in this state delivery or rendition of services takes place. Sellers are required to collect and remit to the state the retail sales tax upon each taxable sale made by them to nonmembers in Indian country.

As evidenced by RCW 82.24.260, RCW 82.24.010(4) and 458-20-192(5), the incidence of Washington cigarette tax is still designed to fall only on the non-Indian buyer, not the Indian seller.[4]

---

[4] Defendant's argument must fail because *Colville* relied on more than the language of RCW 82.24.260 to determine that the incidence of tax fell on the non-Indian buyer. In crafting its findings, the Supreme Court cited the district court's opinion, which held that the

> statute evidences the legislature's intent to impose the legal incidence of tax at the earliest constitutional opportunity. Where on-reservation tribal sales to non-Indians are involved, the first taxable event is, therefore, the use or consumption by the non-Indian purchaser.

**ORDER ON PRETRIAL MOTIONS** * 17

This conclusion is further supported by the Supreme Court's recent findings in *Department of Taxation & Finance of New York v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61 (1994). In *Milhelm*, the Court upheld New York's cigarette tax law, even though it forced Indian wholesalers to pre-pay cigarette tax on cigarettes that would be sold at retail to non-Indians. *Id.* at 78. The Court further held that the New York statute did not violate the Indian Trader Act or the Indian Commerce Clause by requiring pre-collection of tax or pre-approval of tax-exempt deliveries of cigarettes to the reservation. *Id.* at 75-76.[5]

For the above reasons, the Court finds that it is bound by *Colville* and

//

---

446 F. Supp. 1339, 1355 (E.D. Wash. 1978). The 1995 amendments hardly evince a legislative intent to impose an unconstitutional tax.

[5] At the hearing, the Defendant raised the recent decision in *Granholm v. Heald*, 125 S. Ct. 1885 (2005), as support for the proposition that the Washington state cigarette tax scheme violates the dormant commerce clause because it discriminates against out of state Indian cigarette wholesalers. In *Granholm*, the Court held that New York's ban on direct shipment of out-of-state wine to consumers did not "advanc[e] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives" because New York "could protect itself against lost tax revenue by requiring a [wholesaler] permit as a condition of direct shipping" and reporting violations to the Federal Bureau of Alcohol, Tobacco, Firearms & Explosives. *Id.* at 1905, 1906. There is no contention here, however, that Indian wholesalers or retailers are unable to obtain permits to distribute cigarettes in Washington state, as long as they comply with the tax scheme. Moreover, the Washington state pre-notification requirements apply to all persons traveling within Washington state or to Washington state with unstamped cigarettes. Therefore, *Granholm* is distinguishable.

**ORDER ON PRETRIAL MOTIONS** * 18

1   *Milhelm.* Therefore, the Defendant's motion to dismiss based on the incidence of

2   tax is denied.

3         **D.**    **Vagueness and Overbreadth**

4        The Defendant argues that the Washington pre-notification statutes are

5   overly vague because they do not define "proper notice" and do not provide an

6   address to notify the proper authorities. However, the Government points out that

7   WAC 458-20-192 provides a way to contact the Government for pre-notification

8   purposes, and that the Washington State Liquor Control Board has a website to

9   facilitate compliance with Washington statutes and regulations. In light of *Colville*

10   and *Baker*, federal law on this issue also has been well-defined. Accordingly, the

11   Court finds that Washington's pre-notification statutes meet the constitutional

12   minimum and denies the Defendant's motion to dismiss on this ground.

13         **E.**    **Cigarettes as Contraband**

14        The Defendant argues that because Indians may, theoretically, possess

15   unstamped cigarettes on Indian Reservations without those cigarettes being

16   contraband, they are not "contraband" under Washington state law or the CCTA.

17   The Court finds that this is an oversimplification of the law. Cigarettes may be

18   contraband in some circumstances, but be legal in others. *See Baker*, 63 F.3d at

19   1487 (noting that under Washington state law "[u]napproved cigarettes are

20   contraband"). An item may become contraband based on its use or application,

21   and need not be contraband, *per se.* The Defendant's motion to dismiss is denied.

22         **F.**    **Taxation of Personal Property**

23        The Defendant argues that Washington's cigarette tax law amounts to

24   taxation of an Indian's personal property. However, under RCW 82.24.250, sales

25   to Indians by Indians on an Indian reservation are exempt from tax. The

26   Defendant's motion to dismiss is denied.

27   *//*

28         **G.**    **Applicability of Money Laundering Statute**

**ORDER ON PRETRIAL MOTIONS** * 19

The Defendant argues that the money laundering statute for which he was indicted does not apply to the CCTA, because it is not listed as an underlying offense.  This question was settled by the Ninth Circuit in *Baker*, 63 F.3d at 1494.  A violation of the CCTA is listed as a "specified unlawful activity" because the definition of that term includes offenses listed in section 1961(1), which, in turn, references "sections 2341-2346 (relating to trafficking in contraband cigarettes)."  *Id*.  Therefore, the Defendant's motion to dismiss is denied.

### H.   Idaho Excise Tax Law

The Defendant argues that Peter Mahoney's possession of unstamped cigarettes in Idaho was lawful.  While this may be true, it does not settle the question of whether he could lawfully transport those unstamped cigarettes into Washington state.  Therefore, the Defendant's motion to dismiss is denied.

### I.   Prior Notice

The Defendant argues that the pre-approval/notice provisions of the Washington state cigarette tax law violate his Fifth Amendment protection against self-incrimination.  He cites *Marchetti v. United States*, 390 U.S. 39, 49 (1968) as support for this proposition.  In *Marchetti*, the Supreme Court held that the IRS could not require those who received wagers to register.  Here, however, there is no indication that notifying Washington state authorities will incriminate the Defendant.  The only way such notification would be incriminating, is if an Indian chose to sell unstamped cigarettes to a non-Indian.  In the wager situation, the crime already had occurred and the government was requesting reporting of a completed crime.  In the present situation, the authorities may only speculate whether an illegal cigarette sale will occur in the future.  Therefore, the Court finds that the Fifth Amendment is not implicated.  Defendant's motion to dismiss is denied.

//

### III.   Motion to Suppress by Peter Mahoney Based on Staleness and Speculation

**ORDER ON PRETRIAL MOTIONS** * 20

Defendant Peter Mahoney claims that the search warrant affidavit failed to establish probable cause to search his businesses and residence because the information was stale, was based on speculation, and failed to establish a nexus between the crimes and the places searched (Ct. Rec. 26). The Government asserts that the information relied upon was not stale, amounted to probable cause, and established a nexus between the cigarette trafficking and the businesses and residences searched.

### A.    Probable Cause

The Defendant challenges the existence of probable cause. The Government asserts that the affidavit supported probable cause, and even if it did not, the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), applies.

In reviewing a magistrate's probable cause determination, the court must find only that the magistrate had a "substantial basis for conclud[ing] that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotations and citations omitted).

The Affidavit states that between August 1999 to April 2003, none of the Defendants or their businesses had pre-notified the state of any shipments of unstamped cigarettes. *See Affidavit* at 20. Peter Mahoney is not licensed to possess or transport unstamped, untaxed cigarettes in Washington without pre-notification. *See Affidavit* at 51. Agents observed seven instances where boxes that either were identified as cigarettes or were the same size and shape of cigarette cases, were unloaded either at Peter Mahoney's business or at a warehouse located at his residential property. *See Affidavit* at 51-79. On several occasions Mark Van't Hul, in a Ryder Rental truck rented to Mahoney Petroleum, delivered cigarettes to the Indian Smoke Shop, Lyle's Smoke Shop II, and Lyle's Smoke Shop. *Id.* Non-Indian Agents were able to purchase unstamped cigarettes at these shops. *Id.*

Based on this information, the Court finds that the Magistrate Judge was

**ORDER ON PRETRIAL MOTIONS** * 21

1    justified in concluding that there was substantial basis for concluding that evidence

2    of a crime would be found at Peter Mahoney's businesses and residence.[6]

3    **B.    Stale Information**

4    A warrant is not supported by probable cause if it is based on stale

5    information that renders unlikely the continued existence of seizable materials in

6    the place to be searched.  No set time limit renders information stale.  "Staleness

7    must be evaluated in light of the particular facts of the case and the nature of the

8    criminal activity and property sought."  *United States v. Greany*, 929 F.2d 523, 525

9    (9th Cir. 1991).  Evidence that is sustained and perpetuated over a period of time

10   can defeat the claim of "staleness."  *United States v. Bucuvalas*, 970 F.2d 937 (1st

11   Cir. 1992) (finding that evidence gathered over a period of nearly four years was

12   not stale).  *See also United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997)

13   ("[t]he information offered in support of the application for a search warrant is not

14   stale if there is sufficient basis to believe, based on a continuing pattern or other

15   good reasons, that the items to be seized are still on the premises").

16   The Affidavit demonstrates that Agent Goodpaster had information from as

17   far back as 1999 that Peter Mahoney and his Warpath business were involved in

18   trafficking contraband cigarettes.  *See Affidavit* ¶ 70.  Moreover, Agents were able

19   to make eight observations from February 13 to April 25, 2003 of activities that

20   were consistent with ongoing contraband cigarette trafficking.  *See Affidavit*  ¶ 74.

21   Their observations were corroborated by the Ryder truck rental records obtained.

22   *See Affidavit* ¶ 84.  Moreover, ATF agents observed a white cargo van leave the

23   Warpath complex and travel to the Peter Mahoney residence on May 6, 2003.

24   Since these observations evidenced a "continuing pattern," the Court finds that the

25   gap between May 6, 2003, the last observation, and May 20, 2003, the date on

26   which the warrant was served, is not fatal.

27   Moreover, many of the records sought–invoices, bank statements, records of

28

---

[6] The issue of Peter Mahoney's reference is discussed more fully *infra*.

**ORDER ON PRETRIAL MOTIONS** * 22

1  income, records of liabilities–are the type that an ordinary person would keep, for

2  taxation and other recording purposes, for a few years.  At the very least, a person

3  would be likely to retain records throughout 2003.  Consequently, probable cause

4  existed in May 2003 to believe that at least some records relevant to the alleged

5  criminal conduct that continued from 1999 to early-May 2003 would be retained in

6  May 2003.

7      **C.   Nexus**

8      The Defendant asserts that there was no nexus created by the affidavit

9  between evidence of criminal activity and his residence.  Probable cause to issue a

10  search warrant is present when "given all the circumstances set forth in the

11  affidavit . . . there is a fair probability that contraband or evidence of a crime will

12  be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In

13  order to be valid, a warrant must be sufficiently specific.  Specificity has two

14  aspects: particularity and breadth. "Particularity" is the requirement that warrant

15  must clearly state what is sought, and "breadth" deals with the requirement that the

16  scope of the warrant be limited by probable cause on which warrant is based.  *See*

17  *United States v. Kow*, 58 F.3d 423, 426-427 (9th Cir. 1995).  The breadth

18  requirement does not require a direct linkage between the conduct of illegal

19  activity and the place to be searched.  Instead, "probable cause to believe that a

20  person conducts illegal activities in the place where he is to be searched is not

21  necessary; the proper inquiry is whether there was probable cause to believe that

22  evidence of illegal activity would be found in the search."  *United States v. Elliott*,

23  322 F.3d 710, 716 (9th Cir. 2003); *see United States v. Chavez-Miranda*, 306 F.3d

24  973, 978 (9th Cir. 2002) (a magistrate must determine a "reasonable nexus" exists

25  between the place to be searched and the evidence sought in that "it would be

26  reasonable to seek the evidence there").

27      A magistrate judge may issue a warrant for a residence if a "reasonable

28  nexus" exists between the residence and the evidence sought; that is, the magistrate

**ORDER ON PRETRIAL MOTIONS** * 23

1  "need only find that it would be reasonable to seek the evidence there." *United*
2  *States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) (citation omitted). In
3  making this determination, the magistrate judge must weigh "the type of crime, the
4  nature of the missing items, the extent of the suspect's opportunity for concealment,
5  and normal inferences as to where a criminal would be likely to hide stolen
6  property," *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970), but, in the
7  end, he must make a "practical, common-sense" decision. *Gates*, 462 U.S. at 238,
8  103 S.Ct. 2317.

9       Peter Mahoney asserts that there was no nexus between the alleged illegal
10  activity and his residence.  His residential property consists of several storage areas
11  and a warehouse, in addition to his residence.  The Defendant asserts that all
12  business records are kept in an office above the Pemmican Inn Restaurant, Lounge
13  & Café, rather than at his residence.  The Government responds that the
14  observations of Ryder trucks, later seen to be filled with cigarettes, at the Mahoney
15  residence creates a nexus with evidence of illegal activity. *See* Affidavit ¶¶ 74,
16  142-43.  The Government also argues that records of illegal cigarette trafficking
17  are likely to be secreted at personal residences, rather than at businesses.  The
18  Government points to the statement of Internal Revenue Service Special Agent
19  Dale Guess, who indicated that individuals who attempt to conceal their income, or
20  the source of their income, will maintain accounting books and business records at
21  their residences so that they have "ready access" to the documents. *Affidavit* at ¶
22  155.

23       The Court finds that the affidavit created a sufficient nexus with Peter
24  Mahoney's personal residence to support the search.  The Ninth Circuit has
25  "recognized that in narcotics cases 'evidence is likely to be found where the dealers
26  live.'" *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) (*citing*
27  *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).  The Court
28  finds, based in part on the statements of Agent Guess, that contraband cigarette

**ORDER ON PRETRIAL MOTIONS** * 24

trafficking is analogous to narcotics dealing and trafficking, and that business and financial records outlining the trafficking scheme were likely to be found where the cigarette traffickers live.  This fact, in combination with the observations of loading and unloading of commercial goods at warehouses at the Mahoney residence, provides enough of a nexus to support the Magistrate Judge's "practical, common-sense" finding that there was a fair probability that contraband or evidence of a crime would be found at the Peter Mahoney residence.

**IV.    Peter Mahoney's Motion to Dismiss Based Upon Discriminatory Enforcement**

Defendant Peter Mahoney argues that the indictment should be dismissed because the prosecution is engaging in selective prosecution based upon race (Ct. Rec. 24).  The Government responds that the Defendant has failed to meet his burden in proving a discriminatory prosecution.

The United States Supreme Court addressed the issue of selective prosecution in *United States v. Armstrong*, 517 U.S. 456 (1996).  The Court explained that "[i]n the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Armstrong*, 517 U.S. at 464 (*citing Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).  To prove selective prosecution, "[a] defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 417 U.S. at 465 (*citing Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)).  Specifically, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.*  In turn, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated

**ORDER ON PRETRIAL MOTIONS** * 25

1  individuals of a different race were not prosecuted." *Id.*

2      The Defendant argues that because Washington state has focused all of its

3  resources on cigarette tax revenues lost through tribal sales, while ignoring the

4  problem of illegal military sales and casual smuggling, the Government is engaged

5  in selective prosecution.  A discriminatory allocation of state investigatory

6  resources, however, even if proved, is one step removed from selective

7  prosecution.  The fact that Washington state focuses its resources on Indian

8  reservation cigarette trafficking schemes does not mean that the United States

9  Attorney engages in selective prosecution by only indicting Indians engaged in

10  selling cigarettes in Washington.  Instead, Assistant United States Attorney Kirk

11  points to instances where 18 U.S.C. § 2342(a) has been enforced against

12  defendants who are not members of an Indian nation.  *See United States v.*

13  *Abuhamra*, 289 F. 3d 309, 317 (2d Cir. 2004) (native of Yemen convicted under

14  CCTA); *United States v. Hammoud*, 381 F.23d 316, 353 (4th Cir. 2004) (citizen of

15  Lebanon convicted under CCTA).

16      The Court finds that the Defendant has failed to demonstrate that the United

17  States Attorney has engaged in discriminatory enforcement of the CCTA.

18  Therefore, the motion to dismiss is denied.

19  **V.  Motions to Dismiss Because Conduct Complied with Tribal Law and**
20  **Bureau of Indian Affairs Directives;  18 U.S.C. §2341 Does Not Apply to**
    **Indians; and Washington Taxation Scheme is Overly Burdensome**

21      Defendant Peter Mahoney first argues that because his sales and

22  transportation of cigarettes were approved by the Coeur d'Alene tribal authority

23  and the Bureau of Indian Affairs, his conduct cannot violate the CCTA (Ct. Recs.

24  33, 35 and 37).   Moreover, Defendant argues, the CCTA does not apply to Indians.

25  Finally, Defendant argues that Washington State's cigarette tax and allocation

26  scheme is overly burdensome on Indian commerce.

27      As noted *supra*, Baker recognized that the CCTA was a law of general

28  applicability that was "presumed to apply with equal force to Indians."  63 F.3d at

**ORDER ON PRETRIAL MOTIONS** * 26

1484. *Baker* further found that Congress did not intend to exempt Indians from the scope of the CCTA. This Court is bound by *Baker*. *Id.* at 1486. The Defendant points to no authority suggesting that the Bureau of Indian Affairs has the power to exempt members of Indian nations from complying with laws of general applicability, without specific Congressional authorization.

The Supreme Court recognized in *Milhem*, 512 U.S. 61, 75-78 (1994), that states had the right to tax sales of cigarettes from Indians to non-Indians on Indian lands. While Washington state law does allow Indian nations to enter into contracts to collect tribal tax in lieu of state tax, no Indian nation involved here has done so.

Furthermore, pre-notification and allocation schemes strikingly similar to those utilized by Washington state were upheld by the Supreme Court in *Milhem*, 512 U.S. 61, 75-78 (1994). Therefore, the Court finds the Washington cigarette pre-notification and allocation schemes are not overly burdensome to Indian commerce.

For these reasons, the Defendant's motions to dismiss must fail.

## VI.   Motion to Suppress Based on Tracking Device without a Warrant

Defendant Peter Mahoney moves to suppress the observations of ATF Agents that were aided by a tracking device placed in a Ryder truck (Ct. Rec. 28), because no search warrant was obtained. *See Affidavit* ¶ 74. The Defendant argues that the areas reached by the truck are not visible from public roads on the Coeur d'Alene reservation and, therefore, the Agents would not have been able to observe the Ryder truck without the aid of the tracking device.

The Government responds that a warrant was obtained prior to the installation of the tracking device. *See* Exhibit G to Government's Response. Moreover, the Government contends that because the information gathered was the same that could be had by way of visual surveillance, no search warrant was required. *See United States v. Knotts*, 460 U.S. 276 (1983).

**ORDER ON PRETRIAL MOTIONS** * 27

The Court finds that because a search warrant was obtained, the Court need not reach the question of whether *Knotts* applies.

**VII.  Motion to Suppress Evidence Seized Pursuant to Search Warrant**

Defendant Lyle S. Conway moves to suppress the evidence seized at Lyle's II Smoke Shop (LSSII), located at 3114 River Road, Tacoma, Washington, arguing that there was insufficient information to support probable cause, and the search warrant was overbroad (Ct. Rec. 16).  The Government contends that there was probable cause to issue the search warrant, and even if probable cause did not exist, the good faith exception applies.

In reviewing a magistrate's probable cause determination, the court must find only that the magistrate had a "substantial basis for conclud[ing] that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotations and citations omitted).

The portion of the Idaho Affidavit pertaining to LSSII begins at page 87, Section IX.  The Affidavit outlines five separate occasions on which non-Indian ATF agents were able to purchase unstamped cigarettes from LSSII.  *See Affidavit* ¶¶ 129, 132, 134, 137, 140.  The Affidavit states that bank records revealed that six checks were written to JKL Enterprises from LSSII, totaling $225,712.25, and that Agents believed, based upon their expertise, that these checks were payments for wholesale cigarettes, based on notations on the checks.  *Affidavit* ¶¶ 64, 65(d).

The Affidavit also reveals that on March 25, 2003, ATF Agents observed Mark Van't Hul deliver boxes identified as cigarette boxes to LSSII, and that non-Indian Agents were able to purchase unstamped cigarettes at that time.  *Affidavit* ¶74(a).  On April 9, 2003, Agent Reinke purchased two packs of cigarettes without stamps affixed.  *Affidavit* ¶ 129.  Agents purchasing cigarettes were not asked if they were tribal members.  Again, on April 18, 2003, Agents observed a Ryder truck driven by Mark Van't Hul, which was earlier seen delivering cigarettes to the Indian Smoke Shop, pull up to LSSII.  *Affidavit* ¶ 82.  The truck was too close to

**ORDER ON PRETRIAL MOTIONS** * 28

the shop to observe whether unloading occurred. *Id.*  That day, Agent Xiong purchased six packs of cigarettes without stamps affixed. *Affidavit* ¶ 132.  On April 25, 2005, and May 2, 2003, Agent Xiong purchased several packs of cigarettes without stamps affixed. *Affidavit* ¶¶ 134, 137.  On May 9, 2003, Agent Xiong purchased four cartons of cigarettes from LSSII and he asked the employee why the prices were so good on the cigarettes at the store. *Affidavit* ¶ 140.  The employee responded that "we're Indians we don't have to pay tax." *Id.*

The Court finds that based on these facts, the Magistrate Judge had a substantial basis for determining that a search of Lyle's II Smoke Shop would uncover evidence of wrongdoing.

The Defendant also argues that the search warrant was overbroad, because there was no nexus between the facts presented and the financial records sought in the warrant.  Probable cause to issue a search warrant is present when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The information regarding checks written by LSSII to JKL Enterprises, in combination with the information regarding LSSII's sale of unstamped cigarettes to non-Indians, supports the Magistrate Judge's determination that there was a fair probability that financial documents and business records relating to cigarette trafficking and illegal cigarette sales would be uncovered by the search warrant.

Finally, the Defendant objects to the lack of particularity in the search warrant.  "A search warrant must allege with reasonable particularity the types of items that may be seized. Otherwise, it cannot provide meaningful guidance to the officer charged with its execution." *See United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) (citation omitted).  The Court finds that the description of items to be seized in LSII were described with sufficient particularity, and were adequately limited by context of the warrant. *See United States v. Reeves*, 210 F.3d 1041,

**ORDER ON PRETRIAL MOTIONS** * 29

1046 (9th Cir. 2000) (holding that a warrant is not overbroad where the context of the warrant allowing a search for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine" adequately limits the scope of the search).  Therefore, the Defendant's motion to suppress is denied.

    Accordingly, **IT IS HEREBY ORDERED** that:

    1.   Defendant Lyle S. Conway's Motion to Suppress Evidence Seized Pursuant to Search Warrant (CR-04-2131; Ct. Rec. 16) is **DENIED**.

    2.   Defendant Lyle W. Conway's Motion to Dismiss Based on Various Theories of Constitutional Violations and Statutory Interpretation (CR-04-2129; Ct. Rec. 17) is **DENIED**.

    3.   Defendant Peter Mahoney's Motion to Dismiss Case Based on Discriminatory Enforcement (CR-04-2127; Ct. Rec. 24) is **DENIED**.

    4.   Defendant Peter Mahoney's Motion to Suppress Based on Lack of Probable Cause (CR-04-2127; Ct. Rec. 26) is **DENIED**.

    5.   Defendant Peter Mahoney's Motion to Suppress based on Placement of Tracking Device without a Warrant (CR-04-2127; Ct. Rec 28) is **DENIED**.

    6.   Defendant Mahoney's Motion for a Franks Hearing (CR-04-2127; Ct. Rec. 30) is **DENIED**.

    7.   Defendant Mahoney's Motion to Dismiss Washington State's Overly Burdensome Tax Scheme (CR-04-2127; Ct. Rec. 33) is **DENIED**.

    8.   Defendant Mahoney's Motion to Dismiss Because the CCTA Does Not Apply to Tribal Sellers (CR-04-2127; Ct. Rec. 35) is **DENIED**.

    9.   Defendant Mahoney's Motion to Dismiss Because his Cigarette Sales Were Authorized by the United States Department of the Interior and Bureau of Indian Affairs (CR-04-2127; Ct. Rec. 37) is **DENIED**.

//

//

//

**ORDER ON PRETRIAL MOTIONS** * 30

1          **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

2    order, to provide copies to counsel.

3          **DATED** the 13th day of June, 2005.

4

5                                    s/  ROBERT H. WHALEY

6                                    United States District Judge

7

8

9

10

11

12    Q:\CRIMINAL\2004\Mahoney\mahoney.pretrial.wpd

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER ON PRETRIAL MOTIONS** * 31